Mary Jo O'Neill, AZ Bar #005924
Wasan Awad, AZ Bar #025352
James Driscoll-MacEachron, AZ Bar #027828
**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION, Phoenix District Office**
3300 N. Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 640-5032
Fax: (602) 640-5009
Email:   mary.oneill@eeoc.gov
            james.driscoll-maceachron@eeoc.gov
            wasan.awad@eeoc.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | (JURY TRIAL DEMANDED) |
| Scottsdale Wine Café, LLC d/b/a 5th and Wine, | |
| Defendant. | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") against Defendant Scottsdale Wine Café, LLC d/b/a 5th and Wine ("5th & Wine" or "Defendant") to 1) correct unlawful sex based employment practices, 2) correct unlawful retaliation against employees for opposing the unlawful employment practices and threatening to report the practices, and 3) provide appropriate relief to the Charging Party Wyatt Lupton ("Charging Party" or "Lupton") and the Aggrieved Individual Jared

-1-

Bahnick ("Aggrieved Individual" or "Bahnick"). The Equal Employment Opportunity Commission ("EEOC" or "Commission") alleges that Defendant engaged in unlawful discrimination by subjecting Lupton and Bahnick to a hostile work environment that was severe and pervasive and that was due to their sex (male), because they did not conform to sex- or gender-based assumptions, expectations, norms, or stereotypes of men, because of sexual orientation , and, in the case of Bahnick, because he was associated with gay men including Lupton, and because he himself was perceived to be gay as well. Finally, Defendant violated Title VII by retaliating against Lupton by terminating his employment because he opposed the harassment and because he indicated he was going to file a formal external complaint about the harassment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

## PARTIES

3. Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §

2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, an Arizona corporation, continuously did business in the State of Arizona, City of Scottsdale, and continuously had at least 15 employees.

## CONDITIONS PRECEDENT

5. More than thirty days prior to the institution of this lawsuit, Lupton filed a charge of discrimination with the Commission alleging violations of Title VII and Retaliation by Defendant.

6. The EEOC provided Defendant with notice of the charge of discrimination.

7. The EEOC investigated the charge of discrimination and issued a determination finding reasonable cause to believe that Defendant engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964.

8. The Commission invited Defendant to join it in informal methods of conference, conciliation, and persuasion in an attempt to eliminate and remedy the alleged unlawful employment practices.

9. Defendant participated with EEOC in conciliation, during which process Defendant and the EEOC communicated regarding the alleged unlawful employment practices and how to eliminate and remedy them.

10. The Commission was unable to reach agreement acceptable to it through the conciliation process with Defendant.

11. The Commission sent notice to the Defendant informing it that

conciliation had failed.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

13. Defendant hired Jared Bahnick as a server in approximately June 2012.

14. Defendant hired Lupton as a server in October 2012.

15. Defendant did not provide an employee handbook to Lupton or Bahnick when they were hired or at any point during their employment.

16. At all relevant times, Defendant's employees, including Lupton and Bahnick, were not provided with training on how to report sexual harassment or discrimination.

17. Lupton is a gay man.

18. Defendant's employees, including Lupton's supervisors, were aware that Lupton is gay.

19. Bahnick is not gay. He was, however, perceived to be gay by his coworkers and management officials. Many of Defendant's managers and employees also saw Bahnick associate with Lupton and thus perceived him as gay through his association with Lupton.

20. During the course of their employment, Defendant's staff regularly subjected Lupton and Bahnick to demeaning and derogatory comments and/or gestures because they were perceived as not conforming to sex- or gender-based assumptions, expectations, norms, or stereotypes of men.

-4-

21. Examples of the demeaning and derogatory comments and gestures experienced by Lupton from October 2012 to March 2013 include, without limitation, the following:

    a. Comments from Lupton's coworker, Jesse Amster, who said:

"Would you like to go to Carabba's? Don't you like Carabba's, or is it because I'm Mexican and my dick isn't big enough? Hey do you want to blow me in the walk-in? Do you have time to blow me?"

    b. On two to three occasions Lupton's supervisor Scott Yanni referred to Lupton as a "fag."

    c. On March 10, 2013, while carrying a dish he was about to serve, Lupton approached Yanni and chef Josh Yazzi. Lupton asked Yazzi to hand him a lemon wrap. Yazzi threw two lemon wraps at Lupton, who was unable to catch them because he only had one free hand. Yazzi commented, "Wow, can't even catch a lemon." Yanni laughed and said, "Consider who you were throwing it to." As Lupton was walking away Yazzi said, "Well, I guess we know now that Wyatt isn't a catcher, at least not in the kitchen," and both Yanni and Yazzi laughed at this sexual euphemism.

    d. Two days later, on March 12, 2013, Lupton again asked someone in the kitchen to hand him something and Yazzi repeated the euphemism, commenting, "Remember, though, Wyatt doesn't catch."

    e. On March 12, 2013, another employee Jerry (last name unknown), looked threateningly at Lupton and sang in Spanish "No me digas que no," which means "Don't tell me no." Jerry repeatedly made kissing noises to Lupton. Lupton tried to ignore him. On March 12, when Jerry directed kissing noises at Lupton and Lupton ignored him, Jerry commented "He doesn't like Mexicans because they are too small." While making a gesture with his hand to indicate he was referring to penis size. Jerry again said, "Wyatt only likes big penises; he doesn't like Mexicans because they are too small."

    f. On March 12, 2013, Jerry, while grinding his hips, asked Lupton in Spanish, "Do you want it fast or slow, hard or soft, or both?" On

-5-

that same date, Jerry also ran his fingernails down Lupton's spine in front of guests.

g. On March 12, 2013, Jerry asked Lupton to go with him to Karamba a gay bar in Phoenix and Yazzi responded, "He'll go, it is already his favorite bar."

h. On March 12, 2013, while Lupton was telling Jerry's sister Esmeralda, who was also one of his coworkers, that Jerry's behavior made him uncomfortable, Jerry approached Lupton and both he and his sister blocked Lupton in a corner. Jerry asked him, "Are you a fucking racist? Is that why you don't want to have sex with me? Or are you cheating on me?" Lupton felt physically threatened.

i. On at least one other occasion, on March 21, 2013, Jerry again ran his fingernails down Lupton's spine once more making him feel uncomfortable.

j. Over the course of Lupton's employment with Defendant, Jerry also wolf-whistled and made kissing sounds every time Lupton entered the kitchen. Lupton tried to ignore him, and, when Lupton continued to ignore him, Jerry called Lupton a "fucking racist" in Spanish.

k. On March 16, 2013, another employee, Richie looked at Lupton and said, "A blow job makes your whole day, but anal sex makes your hole weak."

l. On March 12, 2013, Lupton's Chef, Josh Yazzi stated that Lupton "only likes big penises."

m. On March 16, 2013, after one of the kitchen staff finished filling an icing bag with chocolate, he asked if anyone wanted to lick the chocolate off the spoon. Lupton reached for the spoon, but Chef Yazzi yelled to the employee, "Skeeter, no one wants your shit!" and "It's ok, though, I am sure Wyatt knows what that tastes like already."

n. Yazzi also used terms with Lupton such as "sissy," "faggot," and "pussy."

22. Examples of the demeaning and derogatory comments and gestures

experienced by Bahnick during his employment from June 2012 until October 2013, include, without limitation, the following:

    a.    Bahnick's coworkers repeatedly called him "strawberry shortcake" after winking and whistling at him. They also called him "faggot" and "ginger snap."

    b.    Some of his coworkers often told him "You make me so hard", and variations of "You're beautiful" or "You would be a really beautiful woman."

    c.    His coworkers also often told him he was sexy and made kissing noises around him. They frequently stuck out their tongues at him and licked their lips.

    d.    One of Bahnick's coworkers made kissing noises at him and told him that he liked to watch Bahnick walk away.

    e.    Bahnick also heard comments directed at him such as "I like your butt and I would like to fuck it."

    f.    About a month after he was hired, in or about July 2012, while his coworkers were making comments about his sexuality, Bahnick protested and stated that he was not gay, but his coworkers said "It's ok, we know you're gay."

    g.    Bahnick's coworkers also touched him in the buttocks and penis and one of his coworkers hit him in the penis. Bahnick loudly announced in the kitchen that he would "punch the next person who touches my dick or my ass" but rather than alleviating the problem, a coworker named Juan began physically assaulting him by twisting and pinching Bahnick's arms so severely that he caused bruises. Juan thought it was funny and continued to assault Bahnick regularly. Juan pinched and twisted Bahnick's skin until Bahnick screamed loudly. The assaults resulted in many dark bruises on Bahnick's skin.

    h.    Yanni also told Bahnick that he had "nice hair" and asked, "Are you sure you weren't giving Wyatt [Lupton] some head before you came to work?"

23.    This harassment of Lupton and Bahnick was done in such an open manner

-7-

that Defendant knew or should have known that the men were being subjected to a hostile work environment because they were perceived as not conforming to sex- or gender-based assumptions, expectations, norms, or stereotypes of men, because of their sex, because of their sexual orientation, and, in Bahnick's case, because he was perceived to be gay and because he was associated with Lupton and/or individuals who were gay.

24. Lupton and Bahnick complained to Defendant's managers and supervisors and others within the workplace on multiple occasions, but Defendant took no remedial action to correct the conduct described in the foregoing paragraphs. These complaints include but are not limited to:

a. In or around December 2012, Lupton complained to Chef BJ Curtis about Jesse Amster's conduct after which the harassment stopped for a few days but then it would restart.

b. After Lupton complained to BJ, his direct supervisor, assistant manager Barkley took Lupton's tables away from him, negatively affecting his tips.

c. Lupton attempted to complain to his direct supervisor Barkley but she made him feel like it was his fault.

d. BJ Curtis told Bahnick not to complain so Bahnick would not get in more trouble.

e. Bahnick complained multiples times to general manager Yanni, about the harassment he was enduring. However, Yanni was nonchalant about the complaints. He refused to document any of Bahnick's complaints even though Bahnick explicitly asked him to write down his complaints.

f. Both Bahnick and Lupton complained to a number of their coworkers about the harassment that they were enduring.

      g.      Lupton informed one of his coworkers that he was planning on reporting Respondent's harassing conduct and that he had already contacted an attorney. This employee warned management, telling them that they should be careful because Lupton was planning on filing discrimination charges.

25. Then, on March 21, 2013 Defendant's general manager Yanni sent an email to the entire restaurant staff in which he stated that there was in issue with "attitude" and "quality of service" and, because of the recent number of customer complaints regarding employee service, the email should be considered a verbal warning to all employees. Yanni informed the staff that, if additional infractions occurred, employees would be suspended or terminated.

26. The next morning when Lupton arrived for his shift, Yanni and Yazzi pulled Lupton aside and terminated him immediately. Yanni told Lupton that he should consider a career change.

27. Jared Bahnick ended his employment in October 2013.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF

### [Sex-Based Hostile Work Environment – 42 U.S.C. § 2000e-2(a)]

28. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

29. From at least June 2012 through at least October 2013, Defendant engaged in unlawful employment practices at its Scottsdale, Arizona facility in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting Wyatt Lupton, and Jared Bahnick to severe or pervasive harassment constituting a hostile work

environment because of sex, including but not limited to, because Lupton and Bahnick were male and/or because they were perceived as not conforming to sex- or gender-based assumptions, expectations, norms, or stereotypes of men. During that time, Defendant also subjected Bahnick to severe or pervasive harassment constituting a hostile work environment because Defendant perceived Bahnick to be gay and associated him with gay men, including Lupton.

30. As described with more particularity above, Defendant's staff regularly subjected Lupton and Bahnick to sex-based derogatory comments, including but not limited to comments about their gender and/or their perceived nonconformance with sex- or gender-based assumptions, expectations, norms, or stereotypes of men.

31. Despite repeated complaints about the harassing comments and conduct, Defendant created and tolerated this sex-based hostile work environment and failed to take prompt or effective remedial action to correct it.

32. Defendant knew or should have known about the harassing comments and conduct described above due to the complaints it received and the open and notorious nature of the conduct.

33. Despite this knowledge, Defendant failed to stop the harassing conduct.

34. Defendant failed to take prompt or effective action to prevent, correct, or remedy the hostile work environment.

35. The effect of the practices complained of in the foregoing paragraphs has been to deprive Lupton and Bahnick of equal employment opportunities and otherwise adversely affect their status as employees because of sex.

36. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

37. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Lupton and Bahnick's federally protected rights.

## SECOND CLAIM FOR RELIEF

**[Retaliation – 42 U.S.C. § 2000e-3(a)]**

38. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

39. Defendant engaged in unlawful employment practices in its Scottsdale, Arizona facility in violation of Section 704(a)(1) of Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against Lupton because he opposed an unlawful employment practice by complaining about unlawful sexual harassment.

40. Defendant terminated Lupton's employment because he opposed the harassment he endured and because Defendant learned that Lupton had seen an attorney and was planning on reporting the employment discrimination due to the sex-based harassment.

41. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

42. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the federally protected rights of Lupton.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any unlawful practice which discriminates against an employee or applicant because of their sex, including on the basis of employees' failure to conform to sex- or gender-based assumptions, expectations, or stereotypes of men.

B.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any unlawful practice which retaliates against any employee for participating in federally protected activity, including making an internal complaint of harassment.

C.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities regardless of sex (including gender identity), and which eradicates the effects of its past and present unlawful employment practices.

D.      Order Defendant to make Lupton and Bahnick whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 13 through 27 above, including job search expenses and backpay, in amounts to be determined at trial.

E.      Order Defendants to make Lupton and Bahnick whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful

employment practices described in paragraphs 13 through 27 above, including emotional pain, suffering, inconvenience, and humiliation, in amounts to be determined at trial.

 F. Order Defendant to pay Lupton and Bahnick punitive damages for its malicious or recklessly indifferent conduct described in paragraphs 13 through 27 above, in amounts to be determined at trial.

 G. Grant such further relief as this Court deems necessary and proper in the public interest.

 H. Award the EEOC its costs of this action.

## JURY TRIAL DEMANDED

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

RESPECTFULLY SUBMITTED this 20th day of January, 2017.

    JAMES LEE
    Acting General Counsel

    GWENDOLYN REAMS
    Associate General Counsel

    EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION
    131 M Street NE, 5th Floor
    Washington, DC 20507-0004

    MARY JO O'NEILL
    Regional Attorney

    JAMES P. DRISCOLL-MACEACHRON
    Supervisory Trial Attorney

    */s/Wasan A. Awad*
    WASAN A. AWAD
    Trial Attorney

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Phoenix District Office
3300 N. Central Ave., Suite 690
Phoenix, AZ 85012
(602) 640-5032

Attorneys for Plaintiff